IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIE LEICHTLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-02062-E |
| | § | |
| ADVANTEX ASSET | § | |
| MANAGEMENT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this civil action is Plaintiff Julie Leichtle's Motion

for Default Judgment (ECF No. 10). Because Leichtle's Complaint fails to

establish a sufficient factual basis for a judgment against the Defendant, the

District Judge should DENY the motion.

**Background**

This putative class action arises out of a series of alleged prerecorded

voice messages that Plaintiff Julie Leichtle received from January to June of

2023. *See generally* Compl. (ECF No. 1). The voicemails generally offered

foreclosure assistance services, including the ability to seek advice from "one

of the top foreclosure experts with over 30 years' experience and DFW's top

real estate agent[.]" *Id.* ¶ 16. According to Leichtle's Complaint, Defendant

Advantex Asset Management ("Advantex") is a "real estate marketing and

lead generation business headquartered in Arlington, Texas." *Id.* ¶ 6.

Leichtle contends that despite registering her residential cell phone number on the national do-not-call (DNC) list, she received the seven prerecorded voice messages from Advantex in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b) and (c).

Leichtle filed this lawsuit on September 14, 2023. Compl. (ECF No. 1). She properly effected service on Advantex on October 9, 2023, and filed proof of service with the Court. (ECF No. 7). Advantex failed to respond or enter an appearance. Therefore, Leichtle requested the Clerk to make, and the Clerk entered, an entry of default. (ECF Nos. 8-9). Leichtle then filed the pending motion for default judgment. Mot. Default (ECF No. 10). Advantex failed to file a response to Leichtle's motion. Therefore, the Court considers the motion without the benefit of a response.

In her motion, Leichtle asks the Court to enter judgment against Advantex and award $21,000.00 in statutory damages as a result of Advantex's alleged violations of the TCPA.

## Legal Standards

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). When a default has been entered, the factual allegations of the complaint are taken as true. *U.S. For Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (first citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981); and

then citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Whether to enter default judgment is within the sound discretion of the court. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) ("[T]he entry of default judgment is committed to the discretion of the district judge.")). "[A] 'party is not entitled to a default judgment as a matter of right, even where a defendant is technically in default.'" *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)); *accord Nat'l Cas. Co. v. KT2 LLC*, 2021 WL 1338221, at \*2 (N.D. Tex. Apr. 8, 2021) (Brown, J.). Default judgments are "disfavored" and there is "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (internal citations and quotations omitted). To determine whether to enter default judgment, the Court conducts a two-part analysis.

First, the Court examines whether a default judgment is appropriate under the circumstances, considering: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default

judgment; and (6) whether the Court would feel obligated to set aside a default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (citing 10 Charles Alan Wright et al., Federal Practice and Procedure § 2685 (2d ed. 1983)).

Second, the Court assesses the merits of a plaintiff's claims to determine whether a sufficient basis exists in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although a defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* However, "the requisite threshold for pleading sufficiency is lower on a motion for default judgment than on a motion to dismiss." *Edmond v. Marathon Petroleum Co., LP*, 2021 WL 619503, at *7 (W.D. Tex. Feb. 17, 2021) (citing *Nishimatsu Constr.*, 515 F.2d at 1206).

## Analysis

The Court first examines the procedural propriety of Leichtle's motion and then proceeds to examine the pleadings to determine whether there is a sufficient basis for entry of a default judgment. Ultimately, the Court should deny Leichtle's default judgment against Advantex because a sufficient basis for the judgment does not exist in the pleadings.

Here, many of the factors that inform the Court's exercise of discretion weigh in favor of finding that a default judgment would be procedurally appropriate under the circumstances. There are no material facts at issue,

because when a defendant defaults, they admit to the plaintiff's well-pleaded allegations of fact. While the default is technical in nature, Leichtle is prejudiced and harmed by the continued delay in this case. The grounds for default are clearly established, and a default judgment would not be unduly harsh as Advantex has been given notice of the action and had sufficient time to respond. Leichtle has not herself caused the non-response or delay. *See Hunsinger v. 204S6TH LLC*, 2022 WL 1110354, at *3 (N.D. Tex. Mar. 23, 2022) (Ramirez, J.), *rec. adopted,* 2022 WL 1102864 (N.D. Tex. Apr. 13, 2022) (Fish, J.).

However, reviewing the final factor and the second step of the default-judgment analysis indicates that entry of a default judgment would be improper in this case. Taking all of Leichtle's allegations as true still yields deficiencies in the substantive merits of her claims, and the Court would likely feel compelled to set aside a default judgment on Advantex's motion. Namely, for the reasons explained below, Leichtle fails to allege a sufficient factual basis to show that Advantex is in fact the party that made the calls to Leichtle's cellular phone—or is otherwise vicariously liable for making the calls.

The TCPA contains two distinct sections that grant individuals a private right of action. Under Section 227(b), the TCPA regulates various telecommunications devices and prohibits the use of certain technologies for calling several types of end-users without an emergency purpose or prior

express consent of the called party. *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 373 (2012); *see* 47 U.S.C. § 227(b). In relevant part, Section 227(b) makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A).

Under Section 227(c), the TCPA delegates authority to the Federal Communications Commission (FCC) to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." 47 U.S.C. § 227(c)(5). Unlike Section 227(b), Section 227(c) does not regulate automated technologies; rather, it regulates calling practices to protect rights of privacy of those registered on the DNC list.

Therefore, "a TCPA violation occurs if: (1) the defendant messaged a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Horton v. Nat'l Republican Senatorial Comm.*, 2023 WL 372066, at *3 (N.D. Tex. Jan. 23, 2023) (Fish, J.). Further, to support a

TCPA claim or a claim under the FCC's regulations, a plaintiff can allege either direct liability by showing that the defendant initiated the offending calls, or vicarious liability by showing that an entity or person in an agency relationship with the defendant initiated the calls. *See Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3–4 (E.D. Tex. Aug. 8, 2019) (Nowak, J.); *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *See Dish Network*, 28 F.C.C.R. at 6583 ¶ 26. That is, to "initiate" suggests some "direct connection between a person or entity and the making of a call." *See id.*

The allegations in Leichtle's Complaint do not provide a sufficient basis to suggest any connection between Advantex and the making of the alleged calls, whether through a theory of direct or vicarious liability. *See Horton v. Advantage One Brokers Corp.*, 2023 WL 4188291, at *4 (N.D. Tex. June 5, 2023) (Rutherford, J.), *rec. adopted,* 2023 WL 4188046 (N.D. Tex. June 26, 2023) (Boyle, J.) (denying motion for default judgment on basis of complaint that contained no more than general, conclusory statements that "[a]ll of the calls at issue were made by, on behalf of, for the benefit of, with the knowledge and approval of the Defendant").

The only specific factual allegations in her Complaint supposedly connecting Advantex to the calls are that several of the voice messages

"purported to be [from a] 'John'" and that "'[u]pon information and belief, the voice of 'John' in the aforementioned voicemails is that of John Culbertson, President of Defendant." Compl. ¶ 23 (ECF No. 1). But Leichtle provides no detail explaining a basis to believe the "John" on the calls was connected to or employed by Advantex. As Leichtle concedes in her Complaint, the messages themselves do not reference Advantex or otherwise "identify the name of the person or entity on whose behalf the call is being made." *Id.* ¶ 15.

Even taking her apparent speculation as true, the connection created between the call and Advantex is too tenuous to justify holding Advantex liable on default judgment. Leichtle does not include any allegations explaining the management structure of Advantex, how "John" came to be on the call, or whether he was acting on behalf of Advantex. *See Lifestyles Dev.*, 2019 WL 4282039, at *4 ("Plaintiff does not allege facts supporting an inference that [defendant] instructed other Defendants and/or unnamed agents or callers to call Plaintiff or show that these entities were in fact acting at the directive or on behalf of [defendant]."). And the insufficiency of Leichtle's Complaint becomes more apparent when considering what kind of allegations she does not include. For example, she does not allege that the phone number initiating the calls belongs to Advantex. *See Katz v. Caliber Home Loans, Inc.*, 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (Scholer, J.) (citing a case in another jurisdiction where the court found

8

direct liability upon allegations that "the plaintiff and her attorneys called several of the phone numbers from which the plaintiff received phone calls and confirmed they belonged to the defendant"). Nor does she allege any facts from which the Court could reasonably infer that the calls are attributable to Advantex. *See id.* (citing a case in another jurisdiction finding "a plausible basis for liability because: (1) the plaintiff was informed that he was speaking with the defendant; (2) the plaintiff was directed to the defendant's website; (3) the callback number provided to the plaintiff had an area code from the same state in which the defendant was based; and (4) the phone calls concerned insurance benefits, the defendant's area of business.").

Because Leichtle's Complaint does not meet even the low pleading standard required to obtain a default judgment, the Court should, in its broad discretion, deny to enter default judgment.

## Recommendation

For the foregoing reasons, the District Judge should DENY Leichtle's Motion for Default Judgment (ECF No. 10).

**SO RECOMMENDED**.

June 14, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

9

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).